

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
06/18/2015

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| PAT W. GAETJE AND JANET A. GAETJE, | § | Case No. 15-30130 |
| | § | |
| | § | Chapter 13 |
| Debtors. | § | |

# MEMORANDUM OPINION ON THE OBJECTION OF BANK OF AMERICA TO DEBTORS' AMENDED CHAPTER 13 PLAN
[Doc. Nos. 38, 49 & 59]

## I. INTRODUCTION

Pat W. Gaetje and Janet A. Gaetje (the "Debtors") filed a Chapter 13 bankruptcy petition, and their pending plan proposes to modify contractual terms of the promissory note held by their home mortgage lender. Bank of America ("BoA"), the servicing agent for the mortgage lender, has objected to the confirmation of the Debtors' plan asserting that the Debtors may not (1) convert an adjustable rate loan into a fixed rate loan; or (2) pay the loan in full before the maturity date. This Memorandum Opinion addresses whether either of these proposed changes constitutes prohibited modifications under Section 1322(b)(2) of the Bankruptcy Code.[1] For the reasons set forth herein, this Court sustains the objection in part and overrules it in part, finding that the Debtors (1) may not convert the adjustable rate to a fixed rate; but (2) may pay the loan in full during the plan period. Consequently, the Court denies confirmation of the Debtors' proposed plan without prejudice to their refiling an amended plan consistent with this Court's ruling.

---

[1] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted.

1

## II. FINDINGS OF FACT[2]

### A. Loan Transaction and Note Provisions

1. On or about December 22, 2005, the Debtors executed an Adjustable Rate Note in the principal sum of $28,600.00 in favor of Countrywide Home Loans, Inc. (the "Note"). [BoA Ex. 3]. The Note is secured by real property located at 5118 Whitebridge, Katy, Texas 77449-7700 (the "Property"). The Note was subsequently indorsed in blank, and is now held by The Bank of New York Mellon, fka the Bank of New York as Successor Trustee to JPMorgan Chase Bank, N.A., as Trustee for the Benefit of the Certificateholders of the CWHEQ Inc., CWHEQ Resolving Home Equity Loan Trust, Series 2005–M. [BoA Ex. 3, p. 5]. BoA is the servicing agent for the Bank of New York Mellon.

2. The parties have stipulated that the Note is secured solely by a lien on the Debtors' primary residence, which is the Property. [Hearing of May 21, 2015, at 1:48 p.m.].

3. The Note sets forth a "maturity date" of December 15, 2030 (the "Maturity Date"). [BoA Ex. 3, 1¶4(A)].

4. Pursuant to the Note, the Debtors are obligated to make monthly "interest only" payments commencing January 15, 2006, and continuing through November 30, 2015. [BoA Ex. 3, 1¶4]. Further, the Debtors are obligated to make monthly principal and interest payments commencing December 1, 2015, and continuing until "the Debtor[s] has paid all of the principal and interest and any other charges" due under the Note. [BoA Ex. 3, 1¶4]. If the Debtors still owe any amount under the Note on the Maturity Date, the remaining amount owed is due on that date. [*Id.*].

---

[2] This Opinion contains this Court's Findings of Fact and Conclusions of Law, which the Court makes pursuant to Bankruptcy Rules 7052 and 9014. To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such; and to the extent that any conclusion of law is construed as a finding of fact, it is adopted as such.

5. In pertinent part, Section 3 of the Note—"INTEREST"—provides the following:

> Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at an annual interest rate of 9.9900%. *The interest rate I will pay will change in accordance with Section 5 of this Note.* (emphasis added). [BoA Ex. 3, 1¶3].

6. In pertinent part, Section 5 of the Note—"INTEREST RATE AND MONTHLY PAYMENT CHANGES"—provides the following:

> **(A) Change Dates**
>
> The interest rate I will pay may change on the **1ST** business day of each month beginning in FEBRUARY, 2006. Each date on which my interest rate could change is called a "Change Date." The new rate of interest will become effective on each Change Date.
>
> **(B) The Index**
>
> Beginning with the first Change Date, my annual interest rate will be based on an Index. The "Index" is the highest Prime Rate as published in the "Money Rates" table of <u>The Wall Street Journal</u>. The Index figure as of the first business day of each month is called the "Current Index."
> If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of the new index.
>
> **(C) Calculation of Changes**
>
> Before each Change Date, the Note Holder will calculate my new annual interest rate by adding a "margin" to the Current Index. The margin on my loan will be **TWO AND ONE-HALF** percentage points (2.5000%). The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 5(E) below, this rounded amount will be my new annual interest rate until the next Change Date. The daily interest rate will be the annual interest rate divided by 365.

[BoA Ex. 3, 2¶5].

7. In pertinent part, Section 4 of the Note—"PAYMENTS"—provides the following:

> I will make monthly payments beginning in January 15, 2006 and continuing through December 15, 2030 . . . I will make payments every month until I have paid all of the principal and interest and any other changes described below that I may owe under this Note. [BoA Ex. 3, 1¶4].

8. Section 6 of the Note—"BORROWER'S RIGHT TO PREPAY"—provides the following:

> I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." I may make a full prepayment or a partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial payment may reduce the amount of my monthly Minimum Payment Due after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase. [BoA Ex. 3, 3¶6].

**B. Relevant Procedural Background of this Chapter 13 Case**

9. On January 5, 2015, the Debtors filed a voluntary Chapter 13 petition (the "Petition Date"). [Doc. No. 1].

10. On the same day, the Debtors filed their proposed Chapter 13 Plan. [Doc. No. 2].

11. On March 13, 2015, the Debtors filed their first Amended Chapter 13 Plan (the "First Amended Plan"). [Doc. No. 38]. Pursuant to their First Amended Plan, the Debtors proposed to make payments to BoA on a total claim amount of $28,444.89 at a fixed rate of 5.75% per annum. [*Id.*]. Thus, the First Amended Plan proposed to change the interest rate under the Note from being an adjustable rate, [*see* Finding of Fact No. 6],

4

to a fixed rate. Further, pursuant to their First Amended Plan, the Debtors proposed to pay off the total claim in month 23 of the plan—i.e., several years prior to the Maturity Date of December 15, 2030 in the Note. [*See* Finding of Fact No. 3].

12. On April 8, 2015, BoA filed its Objection to Confirmation of Debtors' Amended Chapter 13 Plan (the "Objection") on the grounds that the Debtors attempt to modify both the terms of the Note and BoA's rights with respect to the Note in violation of § 1322(b)(2). [Doc. No. 49]. Specifically, BoA asserts that the First Amended Plan violates § 1322(b)(2) because it changes the adjustable rate to a fixed rate and, additionally, because it provides for full payment of the Note several years in advance of the Maturity Date. Further, BoA asserts that the First Amended Plan violates § 1322(b)(5) because it does not propose treatment of the total claim amount estimated by BoA to be $29,229.06, instead of the Debtors' figure of $28,444.89. [*Id.*].

13. On May 12, 2015, the Debtors filed their second Amended Chapter 13 Plan (the "Second Amended Plan"). [Doc. No. 59]. Pursuant to their Second Amended Plan, the Debtors now propose to make payments to BoA on a total claim amount of $29,229.06; therefore, the Debtors have resolved one of the issues raised by BoA in the Objection. [*Id.*]. The Second Amended Plan, however, continues to pay BoA's claim at a fixed rate of 5.75% per annum and proposes to pay off the total claim in month 26 of the plan. Thus, the Second Amended Plan does not resolve BoA's issues regarding the changes in the interest rate and the payment schedule; as to these issues, the Objection carries forward to the Second Amended Plan.

14. On May 21, 2015, this Court held a hearing on BoA's Objection. Counsel for the Debtors and BoA made oral argument on whether the Second Amended Plan violates

5

§ 1322(b)(5). The Court then requested further briefing counsel by June 1, 2015. Neither party submitted briefing to this Court. The Court has now completed its own research and issues this Opinion.

### III. CONCLUSIONS OF LAW

**A. Jurisdiction, Venue, and Constitutional Authority to Sign a Final Order**

1. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district. 28 U.S.C. § 157(a). In the Southern District of Texas, General Order 2012-6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to this Bankruptcy Court.

The phrase "arising in" a case under title 11 refers to proceedings that "would have no existence outside of the bankruptcy." *Matter of Wood*, 825 F.2d 90, 96 (5th Cir. 1987). The contested matter at bar involves the interpretation of a Code provision, namely, § 1322(b)(2); therefore, it would have no existence outside of this Chapter 13 case. Consequently, it is within the jurisdiction of the District Court pursuant to 28 U.S.C. § 1334(b) and has been referred to this Bankruptcy Court under General Order 2012-6.

2. Venue

Venue is proper pursuant to 28 U.S.C. § 1408, which provides that:

a case under title 11 may be commenced in the district court for the district . . . in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of

6

such case have been located for the one hundred and eighty days immediately preceding such commencement . . . .

Here, there is no dispute that virtually all of the assets of the Debtors were located in Katy, Texas on the Petition Date and that these assets had been located there for the 180 days prior to the Petition Date. Katy is in Harris County, Texas, which is part of the Southern District of Texas. Thus, venue is clearly proper.

    3. <u>Constitutional Authority to Enter a Final Order</u>

Having concluded that this Court has jurisdiction over this matter, this Court nevertheless notes that *Stern v. Marshall,* 131 S. Ct. 2594 (2011), sets forth certain limitations on the constitutional authority of bankruptcy courts to enter final orders. However, an order denying confirmation of a proposed Chapter 13 plan is not a final order. *Bullard v. Blue Hills Bank,* 135 S. Ct. 1686, 2015 WL 1959040, at *5 (2015). Therefore, this Court concludes that there is no *Stern* concern regarding its entering an order denying confirmation of the Second Amended Plan.

**B. Section 1322(b)(2) of the Code Governs This Dispute.**

BoA alleges that, in two respects, the Second Amended Plan impermissibly modifies its claim in violation of § 1322(b)(2). Section 1322(b)(2) sets forth that:

> [T]he plan may—(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . .

11 U.S.C. § 1322(b)(2). Thus, while a debtor is allowed to modify the claims of most secured creditors through a Chapter 13 plan, there is an exception for claims secured only by the debtor's principal residence. *Id.* In the case at bar, the parties have stipulated that the Note is secured solely by a lien on the Property, which is the Debtors' primary residence. [Finding of Fact No. 2]. Therefore, BoA's claim may not be modified in any proposed plan. For the reasons set forth below, this Court concludes that, though paying the claim in full during the plan period—i.e.,

7

prior to the Maturity Date of December 15, 2030—would not modify BoA's claim, changing the interest rate would.

### C. The Debtors May Not Modify the Interest Rate of the Note in Violation of Section 1322(b)(2).

There is no dispute that § 1322(b)(2) "prohibit[s] any fundamental alteration in the debtor's obligation, e.g., lowering monthly payments, *converting a variable interest rate to a fixed interest rate*, or extending the repayment term of a note." *Litton v. Wachovia Bank (In re Litton)*, 330 F.3d 636, 643 (4th Cir. 2003) (emphasis added).

Converting an adjustable interest rate to a fixed interest rate thus constitutes a modification as contemplated by § 1322(b)(2). *See In re Coffey*, 52 B.R. 54 (Bankr. N.H. 1985). In *Coffey*, a bank had filed an objection to the debtors' Chapter 13 plan on the grounds that the proposed plan violated § 1322(b)(2) by attempting to modify the bank's rights under its second mortgage lien. *Id.* at 55. More specifically, the debtors' plan proposed to convert their loan obligation from a variable interest rate at 2% above the bank's prime rate to a fixed interest rate of 13.5%. *Id.* Citing § 1322(b)(2), the court noted that "under any definition the word 'modify' includes the conversion of a demand note with a variable interest rate to a . . . fixed interest rate." *Id.* Thus, the court in *Coffey* denied the debtors' motion for reconsideration and stood by its initial ruling sustaining the bank's objection and denying confirmation of the debtors' plan. *Id.* at 56.

In the matter at bar, according to § 1322(b)(2), the Debtors are entitled to modify BoA's rights under the Note so long as the claim is not secured solely by a security interest in the Debtors' principal residence. 11 U.S.C. § 1322(b)(2). Here, that is not the case. BoA holds a security interest in only the Property—i.e., the Debtors' principal residence. [Finding of Fact No. 2.]. Similar to the debtors in *Coffey*, the Debtors here propose to make payments to BoA based

on the conversion from an adjustable (or variable) interest rate, as set forth in the Note, [Findings of Fact Nos. 5 & 6], to a fixed rate of 5.75% per annum. [Findings of Fact Nos. 11 & 13]; [BoA Ex. 2]. Under these circumstances, the Second Amended Plan violates § 1322(b)(2). Thus, the Second Amended Plan must be denied without prejudice to refiling a plan that incorporates the adjustable interest rate provision of the Note.

### D. The Debtors May Completely Pay Off the Note During the Plan Period Without Violating § 1322(b)(2).

In addition to challenging the interest rate proposed in the Second Amended Plan, BoA challenges the proposed schedule, which would result in full payment of the Note before the Maturity Date of December 15, 2030. [Finding of Fact No. 13]. Specifically, the Second Amended Plan proposes to pay off BoA's entire claim by month 26, [Finding of Fact No. 13], which is approximately 13 years prior to the Maturity Date. BoA argues that the terms of the loan obligate the Debtors to make payments on the Note every month until the Maturity Date of December 15, 2030, and therefore BoA contends that early repayment constitutes an impermissible modification of BoA's rights under § 1322(b)(2). Because the Note contains a provision specifically allowing full prepayment, this Court disagrees.

The controlling provision of the Note is Section 6, entitled "BORROWER'S RIGHT TO PREPAY." [Finding of Fact No. 8]. Section 6 explicitly allows the Debtor to "make a *full* prepayment . . . without paying any prepayment charge." [*Id.*]. The section further provides that "[t]he Note Holder will use all of [the] prepayments to reduce the amount of principal that [the Debtors] owe under this Note." [*Id.*]. Consequently, increasing monthly payments in order to pay the Note in full during the duration of the Debtors' Chapter 13 plan is not a modification of BoA's rights because it complies with the original terms of the Note. *Cf. In re Bellamy*, 126 B.R.

134 (Bankr. D. Conn.), *aff'd*, 132 B.R. 810 (D. Conn. 1991), *aff'd*, 962 F.2d 176 (2d Cir. 1992); *In re Moran*, 121 B.R. 879 (Bankr. E.D. Okla. 1990).

In *Bellamy*, the debtor proposed to reduce the total amount due on a note secured by the debtor's principal residence and consequently pay a reduced monthly amount. 126 B.R. at 135–36. The bankruptcy court held that reducing the amount of the monthly payments was an impermissible modification, but that reducing the payment schedule alone would have been permitted, because the debtor's loan agreement "specifically provide[d] that the debtors may 'make payments of principal at any time before they are due.'" *Id.* at 137.

In *Moran*, the debtors attempted to reduce the total amount owed for their home and to pay the reduced balance in its entirety through installment payments followed by a lump sum at the end of the plan. 121 B.R. at 880. The bankruptcy court denied the debtors' plan because it impermissibly reduced the noteholder's debt, but the court noted that a balloon payment was permitted because "[i]f [a] mortgage allows pre-payment, the [d]ebtors may exercise this right." *Id.* at 883.

In the instant case, prepayment with no penalty is expressly allowed by Section 6 of the Note. [Finding of Fact No. 8]. BoA argues that the following language nonetheless prevents the Debtors from fully paying off the Note early: "If I make a partial prepayment, there will be no changes in the due dates of my monthly payments *unless the Note Holder agrees in writing to those changes*."[3] (emphasis added). [Hearing of May 21, 2015]; [Finding of Fact No. 8]. BoA's reliance on this language is misguided. The Note explicitly provides in Section 4 that the Debtors "will make payments every month until [they] have paid all of the principal and interest and any other charges . . . ." [Finding of Fact No. 7]. Although that same section provides that

---

[3] BoA has never agreed in writing—and will never agree in writing—to the proposed change in the payoff of the balance of the Note.

10

the Debtors "will make monthly payments beginning in JANUARY 15, 2006 and continuing through DECEMBER 15, 2030," such provision is meaningless after the Note has been fully paid, at which point the monthly "payment" due would be $0.00. Moreover, the language BoA relies on refers only to *partial* prepayments. The obvious implication is that, if a *full* prepayment is made, monthly payments would necessarily terminate.

Consequently, this Court concludes that the Second Amended Plan does not violate § 1322(b)(2) by virtue of the Debtors making prepayments in excess of the minimum monthly amount, whether such prepayments be made in installments or in a lump sum. There is no impermissible modification of the Note because the very terms of the Note allow for prepayment without a penalty.

## IV. CONCLUSION

For all of the reasons set forth herein, the Court sustains in part and denies in part BoA's Objection. Because the Second Amended Plan uses a fixed interest rate of 5.75% per annum, rather than the adjustable rate set forth in the Note, this Court must deny confirmation because the Plan violates § 1322(b)(2) by impermissibly modifying the interest rate provisions of the Note. However, the Second Amended Plan's provision allowing the Debtors to pay off the Note in full prior to the Note's Maturity Date of December 15, 2030 does not violate § 1322(b)(2); the Note contains a prepayment provision allowing the Debtors to pay off the Note prior to the Maturity Date. Accordingly, the Court's denial of the Second Amended Plan is without prejudice to the Debtors filing a third amended plan that contains this prepayment provision but preserves the adjustable rate provision of the Note.

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

Signed on this 18th day of June, 2015.

_____
Jeff Bohm
United States Bankruptcy Judge